UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIETTE K. BUTLER,

     Plaintiff,

v.                                                                      Case No: 8:15-cv-2356-T-27JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Antoniette K. Butler, seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision did not employ proper legal standards, the Court recommends that the decision be reversed and remanded for further consideration.

## BACKGROUND

### A.   Procedural Background

Plaintiff filed an application for DIB on July 31, 2012.  (Tr. 114.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 46–65.)  Plaintiff then requested an administrative hearing.  (Tr. 73–74.)  Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 33–45.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 17–32.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–16.)  Plaintiff then timely filed a complaint with this Court. (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1968, claimed disability beginning on March 15, 2011.  (Tr. 47.)
Plaintiff has a high school education.  (Tr. 36.)  Plaintiff's past relevant work experience included
work as a certified nurse assistant.  (Tr. 26.)  Plaintiff alleged disability due to arthritis in her back,
migraines, chronic back pain, surgeries in her knees and foot, an ovarian mass, which occurred in
2008, neuropathy, and insomnia.  (Tr. 47.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial
gainful activity since March 15, 2011, the alleged onset date.  (Tr. 22.)  After conducting a hearing
and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe
impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the
bilateral feet, neuropathy, migraine headaches, insomnia, and obesity.  (Tr. 22.)  Notwithstanding
the noted impairments, the ALJ determined that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22–23.)  The ALJ then concluded that Plaintiff
retained a residual functional capacity ("RFC") to perform the full range of sedentary work.  (Tr.
23.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and
determined that, although the evidence established the presence of underlying impairments that
reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the
intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 23.)

Consulting the Dictionary of Occupational Titles and the Selected Characteristics of
Occupations, the ALJ determined that Plaintiff could not perform her past relevant work given her
RFC.  (Tr. 26.)  Applying Plaintiff's age, education, work experience, and RFC to the Medical-

Vocational Guidelines ("Grids"), Rule 201.28, the ALJ determined that Plaintiff is not disabled. (Tr. 27.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a).

A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider the non-exertional limitations caused by Plaintiff's severe impairments, and, thus, the ALJ's finding that Plaintiff can perform the full range of sedentary exertional activity is not

supported by substantial evidence; and (2) the ALJ failed to articulate good cause for discrediting the opinion of Plaintiff's treating physician, Dr. Steven Greenfield.  (Dkt. 17.)  For the reasons that follow, it is recommended that the Commissioner's decision be reversed and this case be remanded for further proceedings.

## A.     The ALJ's Consideration of Plaintiff's Non-Exertional Limitations

Plaintiff argues that the ALJ "failed to incorporate Plaintiff's significant postural, environmental, and mental limitations in his RFC assessment," specifically, that the ALJ failed to "discuss how the severe impairments of neuropathy, migraine headaches, and insomnia would affect Plaintiff's ability to perform work-related activities, such as: kneeling; stooping; crouching; crawling; climbing ladders, ropes, or scaffolds; climbing ramps or stairs; balancing; and understanding and remembering instructions."  (Dkt. 17 at 9–10.)  Plaintiff argues that her neuropathy affects her balance, her migraines cause her pain, and her insomnia causes her fatigue, all of which are non-exertional limitations.  (Dkt. 17 at 10–11.)  The record contains evidence, Plaintiff contends, of Plaintiff's fatigue, migraines, and pain, including findings by Plaintiff's treating physician, Dr. Greenfield.  (Dkt. 17 at 11.)  Further, Plaintiff contends that the ALJ "never consulted with a vocational resource."  (Dkt. 17 at 10.)

In response, Defendant contends that "[t]he ALJ properly considered the relevant evidence in assessing Plaintiff's RFC," and that the ALJ's RFC is supported by substantial evidence.  (Dkt. 20 at 8.)  Defendant argues that Plaintiff's having the diagnoses of migraine headaches, neuropathy, and insomnia does not "establish that she had additional limitations due to these impairments."  (Dkt. 20 at 9.)  Specifically, Defendant contends that (1) Plaintiff fails to cite record evidence showing that her neuropathy caused Plaintiff to have balance issues (a non-exertional limitation), (2) the ALJ discredited Plaintiff's testimony about her symptoms, including pain (a

non-exertional limitation), and (3) generally, on appeal and below, Plaintiff failed to show objective evidence supporting her claims that her impairments caused her the non-exertional limitations she alleges.  (Dkt. 20 at 9–13.)

Here, at step two of the sequential process, the ALJ determined that Plaintiff's impairments of neuropathy, migraine headaches, and insomnia are severe impairments "because they cause significant limitations in [Plaintiff's] ability to perform basic work activities."  (Tr. 22.)  As part of step four of the sequential process, the ALJ found that Plaintiff retains the RFC "to perform the full range of sedentary work."  (Tr. 23.)  The ALJ did not make findings as to whether Plaintiff had any non-exertional limitations.  At the final step of the sequential process, the ALJ relied exclusively on the Grids, and thus did not consult a vocational expert ("VE"), to determine that, given Plaintiff's RFC for the full range of sedentary work, age, education, and work experience, Plaintiff was not disabled.  (Tr. 27.)

Examining the sufficiency of the ALJ's findings as to Plaintiff's non-exertional limitations, in relation the ALJ's RFC assessment, requires a determination of whether the ALJ applied the correct law and provided this Court "with sufficient reasoning for determining that the proper legal analysis has been conducted."  *Keeton*, 21 F.3d at 1066.  Looking to the law governing an ALJ's assessment of a claimant's RFC, a claimant's RFC is "the most [claimant] can still do despite" a claimant's limitations from the claimant's impairments and related symptoms, including pain.  20 C.F.R. § 404.1545(a)(1).  When assessing a claimant's RFC, the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(4).  The claimant's RFC is "based on all the relevant evidence in [claimant's] case record."  20 C.F.R. § 404.1545(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)

("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.").

A claimant's limitations, caused by claimant's impairments and related symptoms, "may be exertional, nonexertional, or a combination of both."  20 C.F.R. § 404.1569a(a).  A limitation is exertional if it affects the claimant's "ability to meet the strength demands of jobs," including sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 404.1569a(b).  Jobs are classified into different physical exertional levels, including, as is pertinent to this case, sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and involves sitting and occasional walking and standing.  20 C.F.R. § 404.1567(a).

Non-exertional limitations, on the other hand, affect a person's ability to meet the other demands of jobs, including mental and pain limitations, and "all physical limitations that are not included in the seven strength demands."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242, n.11 (11th Cir. 2004); 20 C.F.R § 404.1569a(c).  Examples of non-exertional limitations are postural limitations (i.e., stooping, climbing, crawling, crouching, kneeling, and balancing), manipulative limitations (i.e. reaching and handling), and environmental limitations (i.e., restrictions that result in inability to tolerate some physical feature of work settings that occur in certain industries or types of work, such as an inability to tolerate dust or fumes).  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); 20 C.F.R. § 404.1569a(c)(1).

At step five of the sequential evaluation process, the ALJ must determine whether there are significant numbers of jobs in the national economy that the claimant can perform, given the claimant's RFC, age, education, and work experience.  *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam).  The Commissioner bears the burden at step five to

show the existence of such jobs.  *Id.*  The ALJ may make the determination at step five by applying the Grids or consulting a VE.  *Phillips*, 357 F.3d at 1239–40.  An ALJ may not, however, rely exclusively on the Grids if (1) the claimant is unable to perform a full range of work at a given exertional level or (2) the claimant has non-exertional impairments that significantly limit the claimant's basic work skills.  *Id.* at 1242.

If the ALJ determines that a claimant is able to perform a full range of work at a given exertional level "despite any exertional limitations," the ALJ is then required to determine whether the claimant's "nonexertional impairments significantly limit [claimant's] basic work skills"—that is, whether the claimant's non-exertional limitations prohibit the claimant from performing "a wide range of work at a given work level."  *Id.* at 1243–44 (reversing and remanding because the ALJ did not sufficiently address whether claimant's non-exertional limitation precludes a wide range of employment at the claimant's exertional level).  "The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (internal quotations omitted); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988) (internal quotations omitted) (reversing and remanding where, "[a]lthough the ALJ concluded that [claimant] could do some 'medium work', he failed to make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations"); *Sryock v. Heckler*, 764 F.2d 834, 836–37 (11th Cir. 1985) (reversing and remanding because "the ALJ made no findings as to whether [a] nonexertional, environmental limitation was severe enough to prevent appellant from performing a wide range of light work which exists in the national economy," which finding affects whether application of the Grids is appropriate).

When an ALJ fails to make a finding as to whether a claimant's non-exertional limitations significantly affects the claimant's ability to perform the full range of work at a given exertional level, reversal and remand for further proceedings is required. *Dellolio v. Heckler*, 705 F.2d 123, 127–28 (5th Cir. 1983) ("The absence of the requisite findings by the ALJ compels a remand for resolution of the question, raised by objective medical evidence, whether claimant's capacity for light work is diminished by environmental limitations."); *Owens*, 508 F. App'x at 884 ("The ALJ's next conclusion—that 'the additional limitations have little or no effect on the occupational base of unskilled medium work'—lacks sufficient clarity to allow a reviewing court to determine that the proper legal analysis was conducted"). This finding is material because if the ALJ concludes that the claimant's non-exertional limitations do not significantly limit the claimant's basic work skills, then the ALJ may use the Grids, but if the ALJ determines that non-exertional limitations significantly limit the claimant's ability to perform basic work skills, then the ALJ is required to elicit the testimony of a vocational expert. *Phillips*, 357 F.3d at 1243.

Here, Plaintiff alleged disability based on the following impairments: arthritis, migraines, back pain, surgeries in her knees and foot, an ovarian mass, which occurred in 2008, neuropathy, and insomnia. (Tr. 47.) At the hearing before the ALJ, Plaintiff testified that she has pain and swelling in her ankle since having surgery in 2011 and that she requires the assistance of a cane to walk. (Tr. 37–38.) Because her ankle swells, Plaintiff testified, she elevates her foot above her heart "[a]bout 90 percent" of her day, which she spends in bed. (Tr. 38.) She uses her cane "[a]ll the time" "[f]or stability." (Tr. 38–39.) Plaintiff testified that she has pain in her back, which radiates to her hips, that is aggravated when she tries "to get up to walk." (Tr. 39.) As to her neuropathy, Plaintiff testified that she has had the condition for ten years in both of her feet, which causes stinging and itchy sensations in her feet. (Tr. 39–40.) She also testified that she has

migraines three times a month, which she treats by taking medication and sleeping.  (Tr. 40.)  As to fatigue, Plaintiff testified that her treatments for her sickle cell anemia make her tired and that, on a typical day, she can be in bed for between five and eight hours.  (Tr. 41–42.)

The ALJ determined that Plaintiff retained the RFC to perform the full range of sedentary work.  (Tr. 23.)  The ALJ did not make a specific finding as to whether Plaintiff's alleged non-exertional limitations—of pain, balance issues, and other symptoms from her neuropathy, ankle surgery, and back pain—significantly limit Plaintiff's basic work skills.  In formulating Plaintiff's RFC, however, the ALJ considered treatment notes and opinion evidence regarding the symptoms from Plaintiff's impairments of neuropathy, migraines, and insomnia.  Specifically, the ALJ first considered June 2011 treatment notes of Dr. Orlando Maldonado, Plaintiff's treating physician, in which Dr. Maldonado noted that Plaintiff reported that her neuropathy and migraines were "stable" and Dr. Maldonado recommended Plaintiff continue her current prescription regimen.  (Tr. 23, 234.)  The ALJ next cited October 2012 and January 2013 treatment notes from Dr. Melvin Price, Plaintiff's treating physician.  (Tr. 24.)  In Dr. Price's treatment notes, Plaintiff reported pain and burning in her feet, Dr. Price diagnosed Plaintiff with neuropathy, Dr. Price performed tests on Plaintiff, including a nerve fiber test, and Dr. Price commented that Plaintiff's reports of pain from the testing was "out of proportion to procedure performed."  (Tr. 348–352, 412–430.)

The ALJ then afforded significant weight to the opinion of Dr. Thomas Peele, a State agency medical consultant, regarding Plaintiff's RFC.  (Tr. 25.)  Dr. Peele concluded that Plaintiff has exertional limitations, is able to occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, stand or walk for two hours, sit for six hours, and has no limitations on her ability to push and pull.  (Tr. 62.)  As to postural, manipulative, visual, communicative, and environmental limitations, Dr. Peele concluded that Plaintiff had no such limitations.  (Tr. 63.)  In

sum, Dr. Peele found that Plaintiff "is limited to standing/walking to 2 hours in an 8 hour day due to ankle problems and obesity," but that Plaintiff "should be able to work at above RFC." (Tr. 63.)

Finally, in formulating Plaintiff's RFC, the ALJ considered the treatment records of Plaintiff's treating physician, Dr. Greenfield, who treated Plaintiff's back pain. (Tr. 25.) The ALJ afforded Dr. Greenfield's opinion that Plaintiff is permanently "unable to lift, or bend very much" due to her back pain little weight, finding this opinion unsupported by the record. (Tr. 25, 410.) The ALJ cited Plaintiff's May 2013 hospital records in which Plaintiff reported hurting her back because she "moved her" disabled daughter, which, the ALJ concluded, demonstrates that Plaintiff is able to lift and bend. (Tr. 25, 434.) The ALJ also cited to Plaintiff's July, August, and December 2013 hospital records, in which examining physicians found the range of motion in Plaintiff's back and musculoskeletal system to be normal. (Tr. 25, 479, 484, 491, 496, 499.) The ALJ noted, however, that Plaintiff's RFC "accounts for a limitation regarding lifting and carrying of ten pounds occasionally." (Tr. 25.)

Reviewing this evidence, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 23, 25, 26.) The ALJ noted that "although the record establishes treatment for headaches and insomnia, [Plaintiff] has reported improvement with the prescribed medications without any reports of side effects or worsening of symptoms." (Tr. 25.) Further, the ALJ concluded that the record demonstrates that Plaintiff "has responded well to conservative treatment," "has not required any referrals for prolonged physical therapy, chronic pain management treatment, or additional referrals to specialists," and no longer requires the assistance of a cane as a medical necessity. (Tr. 26.) The ALJ found Plaintiff's testimony that she spends most of a typical day in bed (Tr. 38, 44), not credible because her treatment records show "conservative" treatment measures and "[n]o

treating source has advised [Plaintiff] to stay home all day, lie down throughout the day, elevate lower extremities, or to restrict her movement in any manner" or advised Plaintiff to refrain from working.  (Tr. 26.)

According to the test set forth above, the ALJ was required to determine whether Plaintiff's non-exertional limitations significantly limit her basic work skills.  Although the ALJ found Plaintiff capable of the "full range" work at the sedentary exertional level (Tr. 23), and analyzed Plaintiff's impairments and symptoms and made conclusions regarding the credibility of Plaintiff's testimony, the ALJ did not make a specific finding as to whether Plaintiff's non-exertional limitations significantly limit her basic work skills.  Although the ALJ evaluated the credibility of Plaintiff's allegations regarding her pain and other symptoms, the ALJ did not "address adequately whether [Plaintiff's] pain constitutes a non-exertional impairment."  *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987).

Because the ALJ did not make a finding as to whether Plaintiff's alleged non-exertional limitations significantly limit Plaintiff's basic work skills, the ALJ failed to provide this Court "with sufficient reasoning" to determine that "the proper legal analysis has been conducted."  *See Keeton*, 21 F.3d at 1066; *Owens v. Heckler*, 748 F.2d 1511, 1514–15 (11th Cir. 1984) (explaining that "[a] clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful.").  Therefore, on review, it is not "clear" that Plaintiff can do "unlimited types" of sedentary work, and, thus, not clear whether a vocational expert's testimony was necessary.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A Mar. 1981)) ("It is only when the claimant can clearly do unlimited types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."); *Clopper*

*v. Astrue*, No. 308-CV-1055-J-TEM, 2010 WL 1141585, at *8 (M.D. Fla. Mar. 23, 2010) (finding remand appropriate because "the ALJ's treatment of the nonexertional impairments, and the resulting work limitations, is not clear in the decision").  As explained above, the absence of this specific finding precludes this Court from determining whether the ALJ's exclusive reliance on the Grids was proper.  *Johnson v. Colvin*, No. 8:14-CV-0041-T-27TBM, 2015 WL 1423127, at *3 (M.D. Fla. Mar. 27, 2015) (Whittemore, J.) (internal citations omitted) ("Remand is therefore necessary so that the ALJ can determine whether the nonexertional impairments significantly limit [claimant's] basic work skills. If they do not, exclusive reliance on the Grids would be appropriate. If they do, the ALJ must consult with a VE.").

Accordingly, it is recommended that the ALJ's decision be reversed and remanded to the ALJ to make findings as to whether Plaintiff's non-exertional limitations significantly limit her basic work skills.

**B.      The ALJ's Discrediting Opinions of Plaintiff's Treating Physician**

Plaintiff's second argument on appeal is that the ALJ did not articulate good cause to support his according "little weight" to the opinion of Plaintiff's treating physician, Dr. Greenfield, that Plaintiff is unable to lift or bend "very much."  (Dkt. 17 at 12–14; Tr. 25, 410.)  The ALJ evaluated Dr. Greenfield's opinion as follows:

> However, the undersigned gives little weight to the statements by Dr. Steven L Greenfield (Ex.9F), that the claimant is unable to lift or bend permanently because this is not substantiated by the record. Despite the claimant's multiple conditions, which limit her ability to stand and walk for prolonged periods of time, the record does not support that the claimant has problems with lifting and bending. In fact, recent hospital records show that the claimant was lifting and moving her disabled daughter (Ex. 11F). Moreover, objective findings from recent examinations have shown full range of motion and full strength and no deficits with bending at the waist or stooping (Ex. 1 5F). Notwithstanding this, the claimant's residual functional capacity accounts for a limitation regarding lifting and carrying often pounds occasionally.

(Tr. 25.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted). In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The ALJ must afford the opinion of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240–41.

In support of his discrediting Dr. Greenfield's opinion, the ALJ cites to medical evidence the ALJ finds contradicts Dr. Greenfield's opinion. (Tr. 25.) However, because the Court has determined that reversal and remand is mandated based on Plaintiff's first issue on appeal, the Court finds it unnecessary to reach the merits of whether the ALJ adequately articulated good cause to discredit Dr. Greenfield's opinion and whether this determination is supported by substantial evidence. This is because "[t]he Court has already found Plaintiff's RFC must be reassessed in light of" the ALJ's failure to make specific findings regarding the effect of Plaintiff's non-exertional limitations on her ability to perform basic work activities, and, on remand, the ALJ is therefore instructed to "reevaluate the record, including the medical opinion evidence on [Plaintiff's] physical [ ] limitations, when determining Plaintiff's overall residual functional capacity." *Clopper*, 2010 WL 1141585, at *8.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1.      The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above.

2.      The Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on November 21, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James D. Whittemore
Counsel of Record